Last case for oral argument this morning, 24-1214, Meneweather v. Ritz & Hens. Good morning, Mr. Davey. Good morning. Your Honors, and may it please the Court. Ricky Meneweather is permanently deaf in one ear because of a condition that he developed while incarcerated under the care of appellees. Two medical experts disagree about whether or not those doctors' actions caused his permanent hearing loss, and the District Court erred by granting summary judgment to the defendant appellees despite that dispute of fact as to causation. Even if, however, this Court agrees with the appellees that no reasonable jury could find causation as to the permanent loss, including for Dr. Ritz in particular, long-standing precedent of this Court still calls for a reversal for a trial as to the symptoms and pain that Mr. Meneweather experienced while both defendants denied him the standard of care in the meantime. Was that raised in the District Court? Yes. If you look at, I think it's clearest, it's both at paragraph 24 of the complaint, and in the summary judgment brief, it's clearest at pages 3 to 5. He cites cases like Cole and Petty's and Conley, which talk about the delay, causing a delay with no penological purpose, and talks about the pain and the symptoms that he suffered in the meantime. And I think that's, at least especially as to how my colleague briefed their waiver argument, I think that's more than sufficient to preserve that argument. I think the other thing I'll say, too, is that if you look at this Court's precedents, the fact that it's the same claim, it's the same causation, it's essentially the same argument that we're having as to causation generally here. So I think it's preserved. But isn't there a big difference in the causation analysis for the permanent hearing loss? No, I don't think there is. And the reason is that I think that they both, at bottom, come from the actions of the doctors in not treating him. In Dr. Hens' case, she deviated from the standard of care as early as seeing him that first day, when even the defendant's doctor's own expert agreed that the standard of care, high-dose steroids, could have possibly had an effect. And that failure caused both the intermediate suffering in the meantime and the symptoms, and caused the permanent loss. Again, there's a dispute of fact as to that causation. A reasonable jury could find that. Getting back to Dr. Kohler's point, the defendant's expert, Tammy, in paragraph 8, basically says that even if there was medical intervention, the hearing loss was unavoidable. It wouldn't have affected the outcome. And so that expert directly addresses the causation issue. Can you show me where the... It's Pollack, right? Yes, Dr. Pollack. Where does Pollack specifically address the causation issue with regard to the eventual hearing loss? There are tons of times when he says that it wasn't done in a timely fashion, so that he couldn't receive the standard of care therapy. But if you could help me find where he says, you know what, if he got the standard of care, there was even a chance that the hearing loss would have been avoided. Yeah, the clearest place is that AR 459, when Dr. Pollack says that... AR 459, where do you... He specifically says that it could have helped him avoid permanent consequences. I think that's the clearest expression. I mean, obviously, it's the clearest expression of where he's talking about that. What I will say, though, is that Dr. Tammey... I would also push back against the first half here, right? Because I think that Dr. Pollack, what he says there, that he deprived... that the doctors deprived Mr. Menawether of the chance to avoid permanent consequences. That's enough to create the dispute of fact. However, I think there's a separate problem, which is that Dr. Tammey's conclusions at AR 372 are too equivocal under this court's precedence, as it is. You know, this court, in cases like Jackson and Williams, reversed or otherwise affirmed denials of summary judgment, even where the plaintiff has no medical expert at all, because the defendant's medical expert is too equivocal. And that's exactly what happened here. Dr. Tammey at AR 372 says that treatment within 72 hours could potentially reduce the problem, right? Could potentially reduce the hearing loss. That's enough on its own for Dr. Hans, right? Because Dr. Hans saw him within those first 72 hours. That's enough. That's too equivocal under Jackson and Williams. He also says later that the evidence of the high-dose steroids is far from conclusive. That is similarly far too speculative or equivocal under cases like McDonald and Jackson and Williams to... Yes. Yes, Your Honor. And, Counselor, you're talking about the dueling experts here. And I think I just heard you say that the one comment by an expert could create a genuine issue of material fact. But here, it's not just a deviation. It's a substantial deviation. We're not here on a medical negligence case.  How do you see the record establishing that as a genuine issue of material fact? Yeah, I think, and I'll give you two answers to that. The Dr. Pollack report, I think, is very clear of first that Dr. Hans and Dr. Ritz deviated from the standard of care, which was to provide high-dose steroids quickly. Dr. Pollack's report also says that Drs. Hans and Ritz didn't even provide... That their treatments that they did provide did not even make sense on their own terms. He specifically says that even if you took their diagnoses at face value, the treatments that they provided make no sense. And that's repeatedly threaded throughout his opinion as to Dr. Hans' initial, when she sees him at the initial meeting, the follow-up meeting. Dr. Ritz, my colleague has argued that he hasn't treated Mr. Bennewether at all, but that's part of the problem. He was directing treatments under the Wexford utilization management framework without having even seen him, treated him, anything, but was nevertheless directing treatment decisions. And so, I think when you look at... The strongest evidence on causation as to Dr. Ritz, because the expert testified that he needed to get these steroids within 72 hours to two weeks. That was his time period. And we know that Dr. Ritz didn't see him for about two months. Yeah. I agree with that, Your Honor. And I'll say two things about that. The first is that I think Dr. Ritz's own testimony belies the idea that no reasonable jury could find this. And I'll point you there to AR 301. Could find what? Sorry. My question was focused on causation, not on the deliberate indifference piece. But if your expert said, look, he suffered hearing loss and suffered all of these symptoms because he wasn't treated within this window. And we know that Dr. Ritz didn't even see him until two months after that window. Yeah. What's your evidence of causation as to Dr. Ritz? Again, I think... So, I agree. I'm saying that I agree with you that it's clearer for Dr. Hens. Dr. Ritz at AR 301... It's clearer, but you need something. At AR 301... And I'm trying to figure out what you're relying on because it didn't come through in the briefs. Yes. At AR 301, Dr. Ritz himself testifies that there's... He says, there's no way I can answer whether the outcome would have been different, if even as of when he had been providing treatment, that he had provided what Dr. Pollack said was the standard of care. I think that's enough. However, if you don't... That's not an opinion, though, that it would have mattered. That sounds... If we don't think that's enough, do you have something else? Yeah. If you don't think that's enough, I think that the best way to keep Dr. Ritz in the case is, again, the delay that caused the physical symptoms that deprived him of a chance to get a hearing aid sooner. So, he was suffering from hearing loss that could have been treated. He had the throbbing, the persistent tinnitus in his ears. And, you know, that's something that's clear, even through until the moment that he was actually finally referred to an outside specialist. That was including all the period that Dr. Ritz was delaying his testimony. I see, by the way, that I'm getting close. I want to make sure to reserve some time for rebuttal. Could I ask one question? Yes. You know, I think in answer to my question about Dr. Pollack, I think you cited to a deposition transcript. Is that right?  Do you know what page of the deposition transcript that was? I don't know the specific page. I know the page that it was in the record. I can look while my colleague is talking. That would be great. I'd appreciate that. Thank you. Mr. Escher. Good morning, Your Honors. May it please the Court. My name is Jeff Escher on behalf of Dr. Henze and Dr. Ritz. After giving the plaintiff the benefit of the doubt in both procedural aspects of this case, in failing to comply with Rule 56.1 in response to our statement of facts, and in failing to file an own statement of facts, and also giving deference to the plaintiff with respect to the evidentiary issues that were raised in summary judgment, Judge Connelly and the District Court still found that there was not sufficient evidence to consider the causation aspect of this case, as to both Dr. Henze and Dr. Ritz. I know that in the briefs, Your Honors, at some point the defendants are referred to together, but I really think that in analyzing this matter that the individual actions of the defendants are paramount when we're talking about the causation aspect. And Judge St. Eve, I want to follow up on the question that you had asked, because there is nothing in the record with respect to Dr. Ritz on whether or not anything that he did or did not do would have caused or contributed to the hearing loss or any progression of that hearing loss. What about Mr. Davies' argument that, setting aside the hearing loss, the delay, the physical pain, the physical symptoms, that there's sufficient evidence to establish that causally? Well, I would disagree, and I would disagree also that it was argued in the lower court. Other than that it was not argued in the lower court, Your Honor, I don't believe that there's any expert testimony that says that he continued to suffer these things, that he did so as a result of Dr. Ritz's actions or inactions, or also that his condition was worsened or continued for an indefinite period of time because of Dr. Ritz's actions. When we're analyzing the causation aspect, again, Your Honors, it is clear, whether you take Dr. Pollock's opinions or whether you take Dr. Tamey's opinions, that the window to treat sensory neural hearing loss is between 72 hours and 14 days. And the reason that this causation is so important, and some of Judge St. Eve's questions went to this, are you conceding, I mean, Ritz seems to me poster child for deliberate indifference. He's got medical providers seeing an issue, asking for someone to get help, and he says no. Sure, and I would, thank you, Judge Kohler, I would say we are not conceding that there is deliberate indifference on behalf of Dr. Ritz. I will agree that Judge Connelly found in the district court that taking the evidence in light and most favorable to the plaintiff, that a jury could see that there could be deliberate indifference there. And what would your argument be that it's not deliberate indifference? Well, I think the distinction is plaintiff has tried to make Dr. Ritz a treating physician, and he has just not. And the analysis that is made at some points is, in any scenario, if you take an insurance company for an example, somebody reviews whatever the treater's recommendations are, and they either approve it or they don't. In Dr. Ritz's case, he didn't just approve or deny. What he said was, we're not going to send for an audiologist consult at this point, let's try this alternative treatment plan. And the case law in the Seventh Circuit has shown, as long as there is a reasonable basis in the medicine, that an alternative treatment plan, in and of itself, is not deliberate indifference. He's not denying him treatment, he's merely suggesting an alternative plan. I do understand your question, Your Honor, and I think to bring it back to the causation aspect, though, even if we take Judge Cannelli's opinion and the expert opinions in the light most favorable to the plaintiff, that there still is not any causation argument with respect to Dr. Ritz, because the accepted time frame, whichever expert you believe, had passed six, eight weeks or more before then to treat the sensorineural hearing loss. As it pertains to Dr. Henze, this is where it gets a little intertwined with the deliberate indifference aspect of this case, because Dr. Henze evaluated Mr. Manyweather, at least according to his time frame, on the day that he began experiencing hearing loss. The hearing loss was already present, right? So Dr. Henze performs a comprehensive evaluation of him that day, notices impacted serunum, more commonly referred to as earwax, notices some effusion, notices some pus, notices objective findings as to what might be causing that hearing loss. So the fact that Mr. Manyweather cannot hear on the day that he first presented to Dr. Henze is not so clear as to why. Dr. Henze was faced with objective findings that would suggest that there was an active process going on, that she determined whatever treatment plan she did that day to try to address that. Now, she doesn't see him again then for whatever the time period is after that, but if we look at from just the date that she first saw him, what is her subjective belief on that date and what did she do to address it? So while the district court did find, in the light most favorable to the plaintiff, that a jury could believe there was deliberate indifference, we would disagree with respect to that and with respect to Dr. Ritz as well, and especially because in this case, the case law says it has to be such a substantial departure from what the accepted norms are, and when you have, as admitted by plaintiff's counsel, one expert saying, no, you should have done this, and that would comply with the standard of care, and you have another expert, Dr. Tammy, saying, no, what Dr. Henze did, based on what she saw that day, was within the standard of care. I don't know how we can just disregard that opinion because to be so substantially departed from the standard of care would mean that we're not believing that this is the standard of care at all, not that there's just competing opinions on it. So when we tie the deliberate indifference arguments in with the causation arguments with Dr. Henze, Dr. Pollack's opinion is not simply that he should have been started on corticosteroids that day. It's that he should have been diagnosed with sensorineural hearing loss, and once you are suspected of or diagnosed with sensorineural hearing loss, then those steroids need to be implemented. Now, with Dr. Henze faced with objective findings that she described on that first day and coming up with a treatment plan to treat what she believed to be an active ear infection, the suspicion for sensorineural hearing loss was not there at that point, and therefore the implementation of the corticosteroids, which Dr. Tammy says likely would not have had any effect whatsoever, just wasn't there that day. Doesn't Dr. Pollack, though, go beyond just saying that Dr. Henze didn't meet the standard of care? It seems like he's saying that no audiologist, no physician worth their salt. You know, like the tests that were applied and the manner in which they were applied were so beyond the pale and felt so short of the standard of care that it was completely, more or less, unreasonable. Well, Dr. Pollack does say that he believes it felt so substandard from the accepted norms, right? But he's also saying that from the perspective of an ENT. No, no, I understand, but a jury can then credit that and say, okay, well, it's so divergent from the standard of care that it would rise to the level of deliberate indifference. I mean, a jury could credit that testimony and come to that conclusion, right? A jury could, and I think that's why Judge Canale was pretty clear in his opinion that when he's weighing in the light most favorable to the plaintiff, a jury could consider that. I would say, though, that I think that the analysis when we're talking about such a substantial departure from the norms, Your Honor, when we have an expert that's saying whatever she did was exactly within the standard of care based on what she saw, I don't know how we just discard that and say that there was such a substantial departure from the standard of care or from the norm. With respect to the brief itself, Your Honors, I do need to make one notation. We addressed on page 14, the McDonald versus Hardy case, and the heading says, McDonald versus Hardy does not support Mr. Moneyweather's argument. At the bottom, the word not just wasn't in there, so I just want to make sure that when you're reading that, that we're making sure that that's there. Again, Your Honors, I believe that with respect to Dr. Ritz, I believe it is clear that Dr. Ritz should be affirmed with respect to the causation. I believe the same with respect to Dr. Henze, but I do recognize what the court has said in terms of the different time frames on that, though I will say that I don't believe, and I believe Judge Connelly got it right, that despite Dr. Pollack's best efforts, that he did not go that extra step, that he did not tie it up, that he did not say, yes, these would have been effective and are effective in this amount of cases or this percentage of times, and as a result, I would ask the court, unless there's any other questions, to affirm the district court. Thank you. Thank you. Mr. Thaby. Thank you, Your Honor. I'll be very quick. I just have two points. The first is to return to Judge Lee's question, and I would point you specifically on AR 459. It is not the deposition. It is the expert report itself, and as to Dr. Ritz in particular, Dr. Pollack writes that his actions had the effect of denying, and I'm quoting, denying the right to obtain appropriate therapy in a timely fashion to avoid permanent consequences associated with untreated, sudden sensory and neural hearing loss, and I think that's as clear as you're going to get on causation and more than enough to get past summary judgment. And what about with regard to Dr. Henze? Does he say something similar? He does. I pulled the cite specifically for Ritz because I thought that was the one that we were most debating about. The second point and my last point is just that I want to point out that my colleagues is essentially asking for, like, a sea change in the law here, right, by saying that the mere fact of defendants obtaining their own expert can override a dispute of fact for summary judgment and insulate any treating physician from possibly having to go before a jury in an Eighth Amendment medical negligence case. That would be a sea change in the law. I urge you not to adopt it, and as a result, I would urge you to reverse, and I thank you for your time. Thank you, Mr. Davey. The court will take the case under advisement. Thanks to both counsel, and that concludes our oral arguments for today. Thank you.